**UNITED STATES of America, Appellee,**

v.

**Maurice SCHURR, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Harry ROSETSKY, Appellant.**

Nos. 84–1404, 84–1405.

United States Court of Appeals,
Third Circuit.

Argued May 5, 1986.

Decided July 10, 1986.

Rehearing and Rehearing In Banc
Denied Aug. 8, 1986.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Chief of Appeals, Robert E. Welsh, Jr. (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Thomas A. Bergstrom (argued), Philadelphia, Pa., for appellant Schurr.

Pamela W. Higgins (argued), Higgins & Madden, Philadelphia, Pa., for appellant Rosetsky.

Before GARTH, BECKER and RO-SENN, Circuit Judges.

## OPINION ON REHEARING

BECKER, Circuit Judge.

This criminal appeal is before us for the second time. In our previous disposition we affirmed the conviction of the defendants for substantive violations of 29 U.S.C. § 186 (labor representatives' acceptance of payments from employers) and for conspiracy to violate that statute. We held that although there had been some variances in the Government's case between indictment and proof, the variances did not warrant reversal because they were not material and prejudicial. *United States v. Schurr,* 775 F.2d 549 (3d Cir.1985).

We subsequently granted panel rehearing to consider an issue that had not been before us previously—whether the prosecution should have been barred by the statute of limitations. To answer this question, we have had to decide a point that we had reserved in the previous opinion: whether the payment of a sum to a coconspirator was a part of the conspiracy proved at trial. For the reasons discussed below, we

conclude that the jury could have found that the payment was part of the conspiracy, and therefore that the prosecution was not time-barred. We therefore reaffirm the judgments of conviction.

## I.

The facts and procedural history of this case are recounted at length in our previous opinion, hence a brief summary will suffice. The case commenced on February 7, 1984, when a grand jury in the Eastern District of Pennsylvania indicted five officials of Teamsters' Local 929, including the appellants Schurr and Rosetsky (the president and business agent respectively of Local 929). The indictment charged Schurr and Rosetsky, three named coconspirators, and "persons unnamed," with conspiring to accept payments from several employers, among them Valley Fish Co., in exchange for guarantees of labor peace, in violation of 29 U.S.C. § 186(a).

Although it appeared that all five defendants would be jointly tried, the day before the trial began the other three named, indicted coconspirators either pled guilty or had their trials severed from that of Schurr and Rosetsky. *See United States v. Schurr*, 775 F.2d at 552. Schurr and Rosetsky proceeded to trial as joint defendants.

At trial, the government presented copious evidence of weekly payments ("periodic payments") from Valley Fish through various intermediaries to Schurr and Rosetsky designed to secure labor peace. The periodic payments were between $125 and $250, and ran from 1972 through 1979.[1] The government also introduced evidence of payments to Rosetsky form other employers and of larger payments from Valley Fish to Schurr. These other payments are discussed below.

The jury convicted Schurr and Rosetsky of substantive crimes and of conspiracy. As we explained in our previous opinion,

the conspiracy the government proved at trial was a much narrower one than it had alleged in the indictment because the conspiracy proved at trial had only two members, Schurr and Rosetsky, rather than the five members named in the indictment, *see United States v. Schurr*, 775 F.2d at 554, and the conspiracy proved at trial related only to payments from Valley Fish not from any other employer as had been alleged in the indictment. The appellants argued that the difference between the indictment and the proof created a variance fatal to their conviction. We held, however, that although there was a variance between indictment and proof, the variance was neither prejudicial nor material. *Id.* at 555.

The appellants further argued that the breadth of the indictment had permitted the government to introduce evidence that was unrelated to the conspiracy proven at trial, and that that "spillover evidence," had been extremely prejudicial. *See id.* at 556. Specifically, defendants argued that the broad indictment had permitted the government to introduce evidence concerning the following transactions that were unrelated to the conspiracy finally proved at trial: (1) payments to Rosetsky from three employers (Finer, Wasserman, and Silverman) unrelated to Valley Fish; and (2) three relatively large payments from Valley Fish to Schurr, (a) $2,500 in early 1979, (b) $2,000 in 1980, and (c) $1,500 in 1981.

We agreed that the payments to Rosetsky from employers other than Valley Fish, and two of the three relatively large payments from Valley Fish to Schurr, were beyond the scope of the conspiracy proved at trial:

On account of the breadth of the indictment, the government was able to introduce evidence about the payments to Rosetsky from Finer, Wasserman, and Silverman. It is inconceivable, however,

---

**1.** There was a brief break in all payments in mid-1976, when Stanley Pinkus, until then the owner of Valley Fish, sold the company. Pinkus repurchased the company a few months later, and the payments resumed. The payments ceased when Valley Fish stopped employing truckers and delivery people in October, 1979.

that Finer's, Wasserman's and Silverman's payments to Rosetsky had any relationship to the conspiracy to insure labor peace at Valley Fish....

Two of the three payments to Schurr are also clearly irrelevant to the conspiracy proven at trial for they were made in 1980 and 1981, after Valley Fish had stopped employing truck drivers. Because Valley Fish no longer employed truck drivers, its employees were no longer "represented or eligible for representation" by Local 929, and the 1980 and 1981 payments to Schurr clearly do not fall within the terms of the indictment.

*Id.* at 557. We were more doubtful about the third payment from Valley Fish to Schurr—the $2,500 payment in 1979:

We are left with the single 1979 payment and asked to consider whether it was an overt act of the only conspiracy proven. We are inclined to think that it was not, for (i) the payment was over ten times larger than the regular weekly payments to Schurr and Rosetsky, (ii) it did not go through Katz as did the regular weekly payments, and (iii) the payment had a special explanation—it was explained as a "finder's fee"—that distinguished it from the other payments. These factors lead us to believe that the $2500 payment to Schurr was not an overt act in furtherance of the conspiracy. We do not so hold, however, because it is unnecessary to do so and because, unlike the other payments discussed in this section, it is not logically impossible that the 1979 payment was an element of the conspiracy. Thus, we will merely assume that the payment was unrelated to the conspiracy.

*Id.* After concluding (or assuming) that the transactions thus identified by the defendants were indeed not part of the conspiracy proved at trial, and that there was therefore some spillover, we found that the spillover was not material for it did not prejudice the defendants. *Id.* at 557–58. The key to our holding was that there was sufficient evidence of periodic payments that indisputably were part of the narrow conspiracy. *Id.* We thus affirmed the judgments of conviction.

## II.

The appellants petitioned for rehearing on the grounds that our opinion had opened a potentially significant statute of limitations question that had not been present before.[2] The appellants' argument was as follows. First, they noted that the applicable statute of limitations was five years, 18 U.S.C. § 3282 (1982); *Toussie v. United States,* 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970); *United States v. Guerro,* 694 F.2d 898, 903 (2d Cir.1982), *cert. denied,* 459 U.S. 1222, 103 S.Ct. 1230, 75 L.Ed.2d 463 (1983), that is, that the indictment had to have been handed down no more than five years after an overt act of the criminal conspiracy, Reh.Pet. at 3. Second, the appellants pointed out that the district court had instructed the jury that one of the overt acts *listed in the indictment* had to have been committed within five years before the grand jury indictment, *id.* at 6–7 (quoting App. at 649–50). Third, the only overt acts listed in the indictment that related to the Valley Fish conspiracy and were within the five year period were the 1979, 1980, and 1981 payments to Schurr. Reh.Pet. at 3, 7. Fourth, this panel had held that the latter two payments were not part of the conspiracy. Therefore, the appellants reasoned, the only payment that could justify their conviction was the 1979 payment to Schurr of $2,500. This panel had expressed doubt that that payment was part of the conspiracy, however. *United States v. Schurr,* 775 F.2d at 557. Therefore, the appellants concluded, they were entitled to rehearing to determine whether the 1979 payment to Schurr was part of the conspiracy, and, in the event that this court found that it was not, they were entitled to acquittal.

The government countered by arguing that the panel had interpreted the conspiracy too narrowly, and that in fact, the government had proved at trial precisely the (broad) conspiracy it had alleged in the

---

**2.** This issue was raised in the district court, but was not presented originally on appeal.

indictment. Gov.Resp. on Reh.Pet. at 8–10, 12–16. Moreover, the government argued, the 1979 payment that we had doubted was part of the conspiracy was in fact part of the conspiracy, and that our reasons for doubting it were unfounded. *Id.* at 10–11. Finally, the government pointed out that although the district judge instructed the jury that it had to find an overt act *that had been listed* in the indictment and had occurred within five years of the indictment, in fact the jury should not have been so limited, and that any overt act (whether or not listed in the indictment) within the five year period would have satisfied the statute of limitations. *Id.* at 11 n. 4.

Because we believed that potentially difficult issues remained in this case, we asked the parties for supplemental briefs.[3] Upon consideration of those briefs we granted panel rehearing.

### III.

It is undisputed that the applicable statute of limitations is five years. It is also undisputed by the parties that the trial judge's instruction to the jury required the jury to find that an overt act that had been listed in the indictment took place within five years of the indictment.

The defendants believe that the instruction was correct. We believe that the instruction was erroneous, albeit harmless error.[4] However, the erroneous instruction, *in conjunction with our disposition on appeal,* led to a potentially significant problem. The only overt acts listed in the indictment that occurred within the statute of limitations period were the non-Valley Fish payments to Rosetsky and the three relatively large payments from Valley Fish to Schurr. We had held, however, that the non-Valley Fish payments to Rosetsky, and the two later larger payments to Schurr, were not part of the narrow conspiracy proved at trial. *See supra* at 905. Moreover, we had expressed our doubts that the third, 1979, payment to

3. The Court's Letter to Counsel asked them to limit their briefs to the following five points:

A. Did the trial court's instruction, read as a whole, require the jury to find that one of the overt acts listed in the indictment had to have occurred within five years of the indictment to satisfy the statute of limitations?

B. If the trial court's instruction to the jury did require that one of the overt acts listed in the indictment had to have occurred within five years of the indictment to satisfy the statute of limitations, was that instruction correct?

C. Assuming that the charge was incorrect on this point and also overly favorable to the defendants, can such an erroneous charge be a basis for relief to the defendants, or would it constitute harmless error, *see, e.g., United States v. Lane,* —— U.S ——, 106 S.Ct. 725, 88 L.Ed.2d 814?

D. In light of the court's instruction, can the conviction of defendants Schurr and Rosetsky be upheld if the only overt acts proven to be part of the conspiracy between them and Valley Fish were the "periodic payments" that extended into 1979 which were not listed in the indictment?

E. Was the $2,500 "finders' fee" payment from Valley Fish to defendant Schurr part of the conspiracy proven at trial?

4. It is well settled that the government can prove overt acts not listed in the indictment, so long as there is no prejudice to the defendants thereby. *United States v. Adamo,* 534 F.2d 31, 38–39 (3d Cir.), *cert. denied,* 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1976). *See also United States v. U.S. Gypsum Company,* 600 F.2d 414, 419 (3d Cir.), *cert. denied,* 444 U.S. 884, 100 S.Ct. 175, 62 L.Ed.2d 114 (1979). There would appear to be no reason that the government could not satisfy its requisite showing under the statute of limitations by means of an overt act not listed in the indictment. *Cf. Brulay v. United States,* 383 F.2d 345, 350–51 (9th Cir.) (holding that a conspiracy conviction may "rest upon proof of an overt act not charged in the indictment"), *cert. denied,* 389 U.S. 986, 88 S.Ct. 469, 19 L.Ed.2d 478 (1967). *See also United States v. Harris,* 542 F.2d 1283, 1300 (7th Cir.1976), *cert. denied,* 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977); *United States v. Sellers,* 603 F.2d 53, 56 (8th Cir.1979), *vacated and remanded,* 447 U.S. 932, 100 S.Ct. 3033, 65 L.Ed.2d 1127 (1980).

The error was harmless to appellants, however. Indeed, if anything, it hurt the government by limiting the overt acts upon which the jury could rely in finding that the statute of limitations was satisfied. The government in fact proved overt acts within the statutory period: it proved periodic payments to Schurr and Rosetsky through intermediaries extending beyond February of 1979, hence into the statutory period, and it was apparently only through oversight that the Assistant United States Attorney who drafted the indictment did not refer in the indictment to periodic payments beyond 1978.

Schurr was part of the narrow conspiracy. *Supra* at 905. Therefore, if our doubts as to the $2,500 1979 payment were well-founded and it was not in fact part of the conspiracy proved, then the conviction would have to be reversed, for, on account of the erroneous jury instruction, it would have been impossible for the jury to find any overt, listed act within the five year statute of limitations period.[5]

### IV.

■ Because we must consider the evidence in the light most favorable to the government, *United States v. Leon,* 739 F.2d 885, 890 (3d Cir.1984), the question before us is whether a reasonable jury, looking at the evidence in that light, could have found that the $2,500 payment in 1979 ("the 1979 payment") was part of the Valley Fish conspiracy. Upon reconsideration, our previous doubts notwithstanding, we conclude that the answer is yes.

The point most significant to the question of whether the 1979 payment could have been considered part of the Valley Fish conspiracy is that the same people (Valley Fish) were paying the same person (Schurr), and apparently for the same reason (labor peace). This in itself is strongly probative that the 1979 payment was on account of the same agreement that led to the other payments. Moreover, the 1979 payment passed through the same channels that many of the previous periodic payments did: the intermediary for the 1979 payment was a Mr. Freedman who had been an intermediary for some of the previous periodic payments.[6] These facts in themselves are sufficient evidence from which the jury could have concluded that the 1979 payment was a part of the original conspiracy between Schurr and Rosetsky.

Admittedly, the 1979 payment was different in some particulars from the periodic payments that made up the bulk of the conspiracy. The 1979 payment had a special explanation as a "finder's fee," allegedly for Schurr's efforts to arrange the sale of Pinkus's business, and it was significantly larger than the previous periodic payments. These differences constituted of the two bases for our previously-expressed doubts. *See United States v. Schurr,* 775 F.2d at 557. If the 1979 payment were in fact for work by Schurr independent of the conspiracy, then it might not have been a part of the conspiracy. There was little, if any, evidence, however, that Schurr actually made efforts to sell Valley Fish, or that the large payment would have been appropriate compensation if he had done so. A jury could thus easily have found that the so called finder's fee was a sham.[7]

The size of the 1979 payment does indeed distinguish it from the periodic payments. Upon reflection, however, it is not so different in size that a reasonable jury viewing the evidence in the light that we view it here, and in light of the other evidence of the Valley Fish conspiracy in the years 1972 through 1979, could not have concluded that the 1979 payment was not so extraordinary, and was indeed part of the Schurr and Rosetsky conspiracy. There was evidence that Rosetsky had been increasing the pressure on Valley Fish at this

---

**5.** Put differently, the point is that had appellants known that they might be convicted on the basis of acts not listed in the indictment, they might have sought to controvert those acts on appeal. The trial judge's instruction appeared to preclude that possibility, however, and therefore they did not argue the issue as they might otherwise have done. It is axiomatic that a person may not be convicted on the basis of acts that the parties had been told could not support a conviction.

**6.** In this respect, one of the three bases for our expressed doubts in the panel opinion, *see* 775 F.2d at 557, was misplaced. We noted there that the 1979 payment did not go through Katz

"as did the regular weekly [periodic] payments." *Id.* We overlooked, however, the fact that Freedman had also served as an intermediary for some of those payments.

**7.** At the rehearing argument, Schurr's counsel acknowledged that there was no evidence in the record that Schurr had tried to help Pinkus sell Valley Fish. As the government pointed out, terming the 1979 payment a finder's fee may have been for Pinkus' benefit rather than Schurr's. Valley Fish was in financial straits in late 1979, *see infra* at 909, and Pinkus may have been looking especially hard for tax relief. Terming the payoff a "finder's fee" might have allowed him to deduct it.

time, because Valley Fish was significantly in arrears to the Local 929 pension fund. The jury may have found that that was the cause of the increased payments.

## V.

Given the confusion that has attended this case from the start—from the government's unfortunately overbroad and imprecise indictment, through the district court's erroneous jury instruction, to the inaccurate dictum in our previous opinion—it is appropriate to summarize our holding today. We do not determine whether the 1979 payment of $2,500 to Schurr was necessarily part of the conspiracy for which he was convicted. Rather we hold that a rational jury, looking at the facts in the light most favorable to the government, could have so found. Given our scope of review, that is sufficient. Hence we will re-affirm the judgments of conviction.[8]

---

8. The result in this case is consonant with the doctrine that conspirators are liable for conspiracy to accomplish whatever forseeable crimes their coconspirators commit in the course of accomplishing the main objectives of the conspiracy, as well as for their coconspirators' substantive crimes. *See, e.g., United States v. Feola,* 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1974) (upholding conviction of man found guilty of conspiracy to assault a federal agent when object of the original conspiracy was a drug swindle, but the accused's coconspirator assaulted an agent posing as the prospective buyer); *see also United States v. Etheridge,* 424 F.2d 951 (6th Cir.1970) (affirming conviction for conspiracy to murder informant based on an agreement to rob banks), *cert. denied,* 400 U.S. 993 & 1000, 91 S.Ct. 463 & 464, 27 L.Ed.2d 422 (1971); *see generally,* 4 Wharton's Criminal Law § 732 (Torcia, ed. 1981 & 1986 Supp.); Note, *Conditional Objectives of Conspiracy,* 94 Yale L.J. 895 (1985). While these cases do not control the instant case, they are helpful precedent.