**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3225
_____

UNITED STATES OF AMERICA

v.

KASHAMBA JOHN,
                                          Appellant


_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. Criminal No. 2-18-cr-00218-001)
District Court Judge: Honorable Eduardo C. Robreno
_____


Submitted Pursuant to Third Circuit L.A.R. 34.1(a) on
July 16, 2021
_____


Before: McKEE, GREENAWAY, JR., and RESTREPO, *Circuit Judges*


(Opinion filed: June 2, 2022)

_____


OPINION*
_____

---

* This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not constitute binding precedent.

McKEE, *Circuit Judge*.

Kashamba John appeals the District Court's denial of his motion for a new trial following his convictions for sex trafficking and conspiracy to commit sex trafficking by force, threats of force, fraud, or coercion.[1] John argues the District Court erred by (1) concluding the government's belated mid- and post-trial disclosures of evidence did not violate *Brady v. Maryland*;[2] (2) allowing the government to introduce improper co-conspirator hearsay; and (3) allowing separate conspiracies to be charged as a single conspiracy under one count. For the reasons that follow, we will affirm the District Court.[3]

I.

"A *Brady* violation occurs if: (1) the evidence at issue is favorable to the accused, because either exculpatory or impeaching; (2) the prosecution withheld it; and (3) the defendant was prejudiced because the evidence was 'material.'"[4] Under *Brady*, evidence is material if "there is a reasonable probability that, if the evidence had been disclosed, the result of the proceeding would have been different."[5] A "reasonable probability" of a different result is shown if the "evidentiary suppression 'undermines confidence in the

---

[1] **Appellant Br. 5; Gov. Br. 4.**
[2] 373 U.S. 83 (1963).
[3] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.
[4] *Breakiron v. Horn*, 642 F.3d 126, 133 (3d Cir. 2011) (citations omitted).
[5] *Wilson v. Beard*, 589 F.3d 651, 665 (3d Cir. 2009).

outcome of the trial.'"[6]  "No denial of due process occurs if *Brady* material is disclosed . . . in time for its effective use at trial."[7]  In addition, "[a]ny possible prejudice . . . resulting from disclosure at trial can be easily cured by the district court."[8]

The government's first belated disclosure was a missing person's report about one of the underage victims of John's sex trafficking scheme, E.J.[9]  The government disclosed the report after E.J.'s testimony but prior to the close of its case-in-chief.[10] John argues the report could have been used to impeach E.J.'s credibility because it contradicts E.J.'s testimony in several respects.[11]

Although the report was *Brady* material,[12] the Court provided a seven-part remedy to ensure the belated disclosure did not violate John's due process rights.[13]  Among other things, the Court allowed John to cross-examine the author of the report, at which time the jury heard the evidence impeaching E.J.'s testimony; it informed the jury that the

---

[6] *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

[7] *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983).

[8] *Id.*; *see, e.g.*, *United States v. Claxton*, 766 F.3d 280, 304 (3d Cir. 2014) (finding no *Brady* violation where the jury had heard additional cross-examination in light of belatedly disclosed evidence).

[9] *United States v. John*, 391 F. Supp. 3d 458, 460–461 (E.D. Pa. 2019).

[10] *Id.* at 461.

[11] *Id.* at 460–61 (summarizing E.J.'s testimony and the content of the missing person's report that contradicts her testimony); **Appellant Br. 13 (arguing that "[t]he 42 page report included statements made by 'E.J.' to other individuals, electronic evidence tending to show that she had unrestrained movement, free contact with friends and associate[s], and most critically, had access to, and used, electronic communications in a time period during which she claimed to have been held captive by Appellant after he discarded her phone.").**

[12] *See id.* at 462 ("[T]he [missing persons] report was favorable, withheld, and material.").

[13] *See id.* at 465–66.

delay was due to the government's late disclosure; and it required the government to make E.J. available for re-cross-examination—which, no doubt for sound tactical reasons, *John chose not to do*.[14]  Altogether, the Court's remedies ensured that the jury learned the contents of the report.[15]

The second set of belated disclosures, which occurred after John's conviction, included two reports that John argues could have been used to corroborate his position that he did not abuse or coerce the women who worked for him as prostitutes.[16]  The District Court did not err in concluding this evidence was not "material" under *Brady*.[17]  If the evidence had been disclosed, it would likely not have "undermined confidence in the outcome of the trial."[18]  Given the "substantial evidence regarding multiple other women," the fact that John may have afforded some modicum of "leeway" to some victims hardly undermines the conclusion that he used force, fraud, and/or coercion in dealing with his sex trafficking victims.[19]

---

[14] *Id.*

[15] In fact, the jury did not convict John of a conspiracy to sex traffic minors, which suggests John was not prejudiced by E.J.'s testimony. *Id.* at 466.

[16] *United States v. John*, No. 18-CR-00218-01, 2020 WL 4721970, at *11 (E.D. Pa. Aug. 11, 2020).  **The first piece of evidence is the "Lavigne Report," in which an investigator claimed to visit a prostitute working for John and reported no signs of abuse.  Supp. App. 1614.  The second piece of evidence is a law enforcement report that contained a "tip" from a man whose wife worked as a prostitute for John, but would still call him and occasionally come home to visit their children.  Supp. App. 1615–16.**

[17] *John*, 2020 WL 4721970, at *12.

[18] *Wilson*, 589 F.3d at 665 (quoting *Kyles*, 514 U.S. at 434).

[19] *John*, 2020 WL 4721970, at *12; *see also* **Supp. App. 0173 (J.S. testified that she felt trapped and forced to comply with John's orders because she "had nowhere to go," "no money to leave," and was afraid John and his accomplices would hurt her and**

Next, John argues that the District Court improperly admitted hearsay statements of "Daisy," an unindicted co-conspirator, through the testimony of victim G.L.[20] John argues that Daisy's statements were not independently corroborated and thus should not have been admitted.[21] We review the District Court's findings regarding the admissibility of co-conspirator statements for clear error.[22]

Under Federal Rule of Evidence 801(d)(2)(E), "a statement is not hearsay if it is offered against an opposing party and 'was made by the party's coconspirator during and in furtherance of the conspiracy.'"[23] To admit co-conspirator hearsay, the district court must find by a preponderance of the evidence "(1) that a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the

---

her mother as they had her addresses); Supp. App. 0558-0559 (L.E. testified that she told John that she did not want to go to Colorado, and instead wanted to go home, but he made her board the plane because "[t]here's money to be made." She testified that she "had no where to go" and that "[John] took all the money." L.E. started messaging friends for help as she did not want to go to Colorado.); Supp. App. 0719-0721 (J.W. testified that when she entered John's car to perform a sex act, John reached across her abdomen with a pocketknife, took her phone, and drove her to Tampa against her will. He said that if she tried to run, "he had [her] family['s]" information and "he loves when they run because he loves to search for them and kill them."); Supp. App. 0848-0854 (G.L. testified that after John gave her lean, she lost consciousness in the back of his car, woke up in a hotel room and was ordered to perform commercial sex acts on multiple occasions, during which she "was barely conscious" and asleep in between acts due to the lean.).

[20] Appellant's Br. 19–20.

[21] *Id.* at 20.

[22] *United States v. Vega*, 285 F.3d 256, 264 (3d Cir. 2002).

[23] *United States v. Turner*, 718 F.3d 226, 230 (3d Cir. 2013) (quoting Fed. R. Evid. 801(d)(2)(E)).

statement was made in furtherance of the conspiracy."[24] To prove these elements, the government "may rely on the co-conspirator's statements themselves, if they are corroborated by independent evidence."[25]

The District Court did not clearly err in admitting Daisy's statements. In *United States v. Gambino*, we held that a witness's testimony of his or her firsthand observations of a defendant's interactions with a co-conspirator is sufficient "independent evidence" to admit the co-conspirator hearsay.[26] Here, the District Court properly concluded that Daisy's statements were independently corroborated by G.L.'s extensive personal observations of John and Daisy's conspiratorial efforts.[27] For example, G.L. testified, among other things, that Daisy recruited her to work for John, took her shopping for clothes with John, showed her how she operates internet advertisements for John's sex trafficking business, and took pictures of G.L. to create such an advertisement.[28]

## III.

Finally, John argues that the verdict cannot be sustained because the evidence presented at trial alleges two distinct conspiracies, rather than a single conspiracy as charged in count one.[29] Because this claim was not preserved in the District Court, we review for plain error.[30]

---

[24] *United States v. McGlory*, 968 F.2d 309, 333 (3d Cir. 1992) (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)).
[25] *Turner*, 718 F.3d at 231 (citing *Bourjaily*, 483 U.S. at 181).
[26] 926 F.2d 1355, 1362 (3d Cir. 1991).
[27] *John*, 2020 WL 4721970, at *8.
[28] **Supp. App. 0841-49.**
[29] **Appellant Br. 25.**
[30] *United States v. Boone*, 279 F.3d 163, 174 n.6 (3d Cir. 2002).

"A conviction must be vacated when (1) there is a variance between the indictment and the proof presented at trial and (2) the variance prejudices a substantial right of the defendant."[31]  A variance exists where "a single conspiracy is alleged in the indictment, . . . [but] the evidence at trial proves only the existence of multiple conspiracies."[32]

The essential elements of a conspiracy are "(1) a shared 'unity of purpose,' (2) an intent to achieve a common goal, and (3) an agreement to work together toward the goal."[33]  Multiple conspiracies, unlike a single conspiracy, are "separate networks operating independently of each other."[34]  However, a "finding of a master conspiracy with sub-schemes does not constitute a finding of multiple, unrelated conspiracies and, therefore, would not create an impermissible variance."[35]  Furthermore:

> A variance does not prejudice a defendant's substantial rights (1) if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, [or] (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense.[36]

Despite conceding that the "scheme between the two proposed conspiracies were essentially identical," John argues that the two alleged conspiracies were distinct because

---

[31] *United States v. Kelly*, 892 F.2d 255, 258 (3d Cir. 1989) (citing *United States v. Schurr*, 775 F.2d 549, 553 (3d Cir. 1985)).
[32] *Id.*
[33] *United States v. Perez*, 280 F.3d 318, 342 (3d Cir. 2002) (citations omitted).
[34] *Id.* at 346 (quoting *United States v. Barr*, 963 F.2d 641, 648 (3d Cir.1992)).
[35] *Kelly*, 892 F.2d at 258 (citation omitted).
[36] *United States v. Daraio*, 445 F.3d 253, 262 (3d Cir. 2006) (alteration in original) (quoting *United States v. Schoenhut*, 576 F.2d 1010, 1021–22 (3d Cir. 1978)).

he had employed different people and prostituted different women.[37]  However, a "single conspiracy is not transformed into a series of unrelated, multiple conspiracies merely through a change in its membership."[38]  The District Court found "ample evidence . . . to support a finding that John conspired with multiple people to use force, threats, fraud, or coercion to cause [multiple women and girls] to engage in commercial sex."[39]  The fact that John employed different people at different times during the conspiracy does not change the conclusion that this was a single conspiracy to "[i]dentify women to prostitute, then prostitute them."[40]

Moreover, even if two separate conspiracies should have been charged, John failed to show that finding a single conspiracy prejudiced his substantial rights.  He was adequately informed of the charges against him and was not prevented from preparing his defense or otherwise misled or surprised at trial.

## IV.

For the foregoing reasons, we will affirm the District Court.

---

[37] *See* Appellant Br. 25–26 (arguing that his prostitution activities involving Daisy and G.L. in 2011 were distinct from his conduct in 2012 and later, when he prostituted other women and girls with assistance from a different person, Arianna Somerville).
[38] *Kelly*, 892 F.2d at 259.
[39] *John*, 2020 WL 4721970, at *3.
[40] Appellant Br. 26.