

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-3-2008

# USA v. Gagliardi

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1609

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation
"USA v. Gagliardi" (2008). *2008 Decisions.* Paper 907.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/907

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 06-1609/1946/3845
_____

UNITED STATES OF AMERICA

v.

ANTHONY GAGLIARDI
a/k/a
TONY GAGS

Anthony Gagliardi,
                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cr-0796)
District Judge: Honorable John R. Padova
_____

Submitted Under Third Circuit LAR 34.1(a)
June 6, 2008

Before:   JORDAN, GREENBERG and VAN ANTWERPEN, *Circuit Judges*

(Filed: July 3, 2008)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Anthony Gagliardi appeals his convictions for conspiracy to distribute cocaine and attempted possession with intent to distribute cocaine, both in violation of 21 U.S.C. § 846. Concluding that Gagliardi's numerous allegations of error lack merit, we will affirm.[1]

I.    *Background*

Because we write primarily for the parties, we limit our recitation of the facts to those pertinent to the outcome of this appeal. In 2002, law enforcement officers learned that Gagliardi, Steven Carnivale, and others had entered into an agreement to possess and distribute cocaine. Carnivale agreed to supply cocaine in bulk, and Gagliardi agreed to resell it. Carnivale was eventually arrested, and he agreed to cooperate with the authorities. He testified that he began supplying Gagliardi with cocaine for resale in August 2002. Carnivale also testified that he supplied Gagliardi with cocaine on October 3, 2002, and again on October 8 or 9, 2002. Finally, Carnivale testified that the authorities intercepted two later cocaine shipments intended for Gagliardi and other participants in the conspiracy. The first shipment was to have been delivered on October 29, 2002, and the second on December 8, 2002.

On February 15, 2004, a grand jury returned a four-count indictment against Gagliardi. Count I charged that, between March and December 2002, Gagliardi participated in a conspiracy to possess and distribute more than five kilograms of cocaine.

---

[1]The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

Count II charged that, on October 8 or 9, 2002, Gagliardi possessed with the intent to distribute 500 grams of cocaine. Count III charged that, on October 29, 2002, he attempted to possess with the intent to distribute between 500 grams and two kilograms of cocaine. Finally, Count IV charged that, on December 8, 2002, he attempted to possess with the intent to distribute between 500 grams and two kilograms of cocaine.

Despite the District Court's strong urging not to do so, Gagliardi insisted that he be allowed to exercise his right to represent himself at trial. After conducting an extensive colloquy with Gagliardi and determining that his waiver of the right to counsel was knowing and voluntary and that he had the mental capacity to represent himself, the District Court allowed Gagliardi to conduct his own defense.

Gagliardi filed a motion for a bill of particulars and a motion to dismiss the indictment due to alleged prosecutorial misconduct. As to the bill of particulars, he argued that the indictment was vague and requested a list of all of the alleged drug transactions on which the government intended to rely at trial. Regarding the motion to dismiss, he argued that the prosecutor had committed misconduct by permitting testimony before the grand jury that implied Gagliardi had mob connections. After the government voluntarily gave Gagliardi a list of the dates of alleged drug transactions on which it intended to rely on at trial, the District Court denied the defense motions. The October 3, 2002 drug transaction between Gagliardi and Carnivale was not included on the list of drug transactions provided by the government.

Following an eight-day trial, a jury convicted Gagliardi on Counts I and III, and acquitted him on Counts II and IV. After the verdict, Gagliardi filed a motion for a new trial, alleging, *inter alia*, that he should have received a bill of particulars, that there was insufficient evidence to support the jury's verdict, and that the prosecutor had committed misconduct at trial and before the grand jury. The District Court denied those motions, and Gagliardi filed this timely appeal.

## II.   *Discussion*

On appeal, Gagliardi continues to act as his own counsel and alleges that the District Court committed numerous errors. As discussed herein, his arguments are unpersuasive.

### 1.   *Gagliardi's* Brady *Rights Were Not Violated*

Gagliardi contends that the government violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to inform him that Thomas Carmean, one of the government's witnesses, had incorrectly identified him in a photo lineup.[2] *Brady* holds that the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Id.* at 87. The "touchstone of materiality is a 'reasonable probability' of a different result." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). We conclude that no *Brady* violation occurred here because, contrary to Gagliardi's contention, the government disclosed

---

[2]Gagliardi did not raise this issue in the District Court. Hence, we review his argument for plain error. *United States v. Boone*, 279 F.3d 163, 174 n.6 (3d Cir. 2002).

Carmean's testimony in pretrial discovery. In fact, Gagliardi actually cross-examined Carmean at trial about the incorrect identification.

Gagliardi also alleges that the government violated *Brady* by failing to turn over evidence regarding the drug transaction between him and Carnivale on October 3, 2002. According to Gagliardi, introducing evidence of that transaction violated *Brady* because the October 3, 2002 transaction was not on the list of drug transactions provided by the government prior to trial. We disagree. *Brady* requires that the government turn over evidence "favorable to [the] accused." 373 U.S. at 87. Evidence that Gagliardi was involved in a drug transaction can hardly be considered "favorable" to him and hence is not covered by the obligation imposed by *Brady*. Further, even if *Brady* applied, the record is clear that the evidence of his involvement in the October 3, 2002 transaction was given to Gagliardi during pretrial discovery.

2. *Gagliardi Knowingly and Voluntarily Exercised His Right to Act In His Own Defense at Trial*

Gagliardi next argues that the District Court erred in allowing him to conduct his own defense at trial.[3] He contends that, during trial, he suffered from various physical and mental conditions which prevented him from understanding the nature of his decision and preparing an effective defense. The record belies his contention. To be effective, a

_____

[3]We exercise plenary review over the legal conclusion that a defendant's decision to proceed *pro se* was voluntary, knowing, and intelligent. *United States v. Peppers*, 302 F.3d 120, 127 (3d Cir. 2002). We review the facts found by the District Court incident to that legal determination for clear error. *Id.*

defendant's decision to proceed *pro se* must be "voluntary, knowing, and intelligent." *Buhl v. Cooksey*, 233 F.3d 783, 789 (3d Cir. 2003). During a hearing on Gagliardi's motion to represent himself, his attorney conducted an extensive direct examination into his physical and mental health, and the government addressed those same issues on cross-examination. The District Court also conducted an extensive colloquy with Gagliardi before allowing him to defend himself. It considered whether he had unequivocally expressed his desire to act *pro se*, whether he understood the charges against him, the potential punishment he faced, the risks of proceeding without an attorney, and whether he was competent to stand trial. *See United States v. Peppers*, 302 F.3d 120, 132 (3d Cir. 2002). The Court also forcefully urged Gagliardi not to defend himself. Nevertheless, Gagliardi stated numerous times, in various ways, that he wished to represent himself, that he was not suffering from any impairments that would affect his ability to act on his own behalf, and that, although he suffered from depression and anxiety, those conditions were controlled by the medication he was taking. In light of the record, Gagliardi's contention that the District Court erred in allowing him to proceed *pro se* is simply without legitimate foundation.

*3.*     *The Government Did Not Violate Federal Rule of Evidence 404(b)*

Gagliardi next argues that the government violated Federal Rule of Evidence

404(b) by introducing three instances of evidence of "other crimes, wrongs, or acts."[4]

First, he argues that Rule 404(b) barred the government from introducing evidence

regarding the previously-mentioned October 3, 2002 drug transaction. That evidence,

however, did not violate Rule 404(b) because, even though it was not specifically

mentioned in the indictment, it was clearly part of the alleged conspiracy and, therefore,

not evidence of a separate, uncharged crime.

Next, Gagliardi argues that certain testimony by Steven Carnivale violated Rule

404(b). Carnivale testified that he sometimes gave Gagliardi small amounts of marijuana.

According to Gagliardi, Carnivale's testimony violated Rule 404(b) because the

indictment charged only offenses relating to cocaine, not marijuana. However,

Carnivale's testimony was given in the context of explaining that he sometimes received

payment for shipments of cocaine in marijuana rather than cash, and that he sometimes

gave some of the marijuana he had received to Gagliardi. Thus, Carnivale's testimony

was not admitted for the purpose of showing that Gagliardi committed other, uncharged

crimes. Instead, it was admitted to show how the charged conspiracy operated.

---

[4]Our review of the District Court's evidentiary rulings is for abuse of discretion. *United States v. Serafini*, 233 F.3d 758, 768 (3d Cir. 2000). To the extent the District Court's ruling turns on an interpretation of the Federal Rules of Evidence, our review is plenary. *Id.*

7

Finally, Gagliardi argues that the government violated Rule 404(b) by introducing testimony associating him with organized crime.[5] Again, however, the testimony was not introduced for any improper purpose. Instead, it was introduced to explain how Gagliardi and Carnivale met each other.[6] *See United States v. Butch*, 256 F.3d 171, 176 (3d Cir. 2001) (explaining, in the context of a Rule 404(b) challenge, that "testimony of a co-conspirator could be considered relevant to provide necessary background information, to show an ongoing relationship between the defendant and a co-conspirator, and to help the jury understand the co-conspirator's role in the scheme") (internal quotation marks, punctuation, and citation omitted). In short, Gagliardi has failed to show that the government violated Rule 404(b).

4. *Gagliardi's Motion to Dismiss the Indictment For Prosecutorial Misconduct Before the Grand Jury Was Properly Denied*

Before the grand jury, Carnivale testified that he and Gagliardi first met each other at a meeting with "[s]outh Philly mob guys." (Appellant's App. at Grand Jury transcript excerpt, p. 5.) Carnivale also said that he and Gagliardi took part in extortions, loan sharking, and other illegal activities together. Gagliardi contends that the prosecutor

---

[5]Carnivale testified that he was introduced to Gagliardi by members of the Philadelphia mafia.

[6]We do not suggest that a district court would be wrong to conclude that a seemingly tangential detail such as Gagliardi's alleged mob connections should be kept out of evidence at trial after a Rule 403 balancing of unfair prejudice and probative value. But that argument was not made either to the District Court or us, and we thus have no occasion to consider its implications here.

should not have been permitted to put that information before the grand jury because it involved actions not charged in the indictment. He asserts that Carnivale's testimony unfairly prejudiced the grand jury, and, as a result, the District Court should have granted his motion to dismiss the indictment.[7] We disagree.

Dismissal of an indictment is a "drastic remedy." *United States v. Morrison*, 449 U.S. 361, 366 n.2 (1981). In *United States v. Serubo*, 604 F.2d 807 (3d Cir. 1979), we held that a prosecutor's questioning of a grand jury witness rose to the level of misconduct when the prosecutor, without any evidentiary basis, repeatedly asked a witness whether the defendants were members of the Philadelphia mafia, and whether they had engaged in loan sharking. *Id.* at 815. The prosecutor also "impugned the testimony of witnesses who failed to link the defendants with organized crime and hectored other uncooperative witnesses for their failure to comply with unrelated Federal laws." *Id.* Here, by contrast, Carnivale's testimony was founded on his personal knowledge and described how he and Gagliardi met. The evidence explained the development of the relationship between the co-conspirators and hence was arguably connected to the offenses the government sought to charge. *Cf. Butch,* 256 F.3d at 176. Further, the prosecutor expressly instructed the grand jurors that they were not to consider any alleged organized crime activity when deciding whether to indict Gagliardi for

---

[7]We exercise plenary review over the District Court's legal conclusions with respect to Gagliardi's motion to dismiss the indictment, and we review its factual findings for plain error. *United States v. Nolan-Cooper*, 155 F.3d 221, 229 (3d Cir. 1998).

violating federal drug laws.  We thus conclude that the prosecutor did not commit

misconduct and that the District Court acted within its discretion in denying Gagliardi's

motion to dismiss the indictment.

     5.       *The Indictment Did Not Vary From the Evidence Presented at Trial*

Gagliardi next asserts that there was a fatal variance between the indictment and

the evidence presented at trial because, at trial, the government introduced evidence of the

October 3, 2002 drug transaction even though that transaction was not mentioned in the

indictment.[8]  "To prevail on this issue, [a defendant] must show (1) that there was a

variance between the indictment and the evidence adduced at trial and (2) that the

variance prejudiced some substantial right."  *United States v. Balter*, 91 F.3d 427, 441 (3d

Cir. 1996).  Gagliardi has not made the necessary showing.

The indictment alleged that "[f]rom ... about March 2002, and continuing up to on

or about December 8, 2002 ... Anthony Gagliardi [violated 21 U.S.C. § 846] by

conspir[ing] and agree[ing] with Steven Carnivale ... to knowingly and intentionally

distribute in excess of five kilograms of ... cocaine." (Supp. App. at 1.)  The indictment

then listed a series of overt acts in furtherance of the conspiracy between March and

December 2002.  Although the October 3, 2002 drug transaction is not among the overt

acts specifically listed in the indictment, "[i]t is well settled that the government can

---

[8]We exercise plenary review over whether there was a variance between the indictment
and the evidence presented at trial.  *United States v. Lee*, 359 F.3d 194, 207 (3d Cir.
2004).

prove overt acts not listed in the indictment, so long as there is no prejudice to the defendants thereby." *United States v. Schurr*, 794 F.2d 903, 908 n.4 (3d Cir. 1986). Gagliardi argues that he was prejudiced because he could not prepare an effective defense without a full listing in the indictment of all of the drug transactions in which he allegedly participated. That assertion rings hollow, however, because the government had provided to him in pretrial discovery the evidence relating to the October 3, 2002 drug transaction.[9] Because Gagliardi has failed to demonstrate prejudice, we need not consider whether a variance actually exists.

6.  *The Jury's Verdict Was Sufficiently Supported by the Evidence*

Gagliardi argues that the evidence introduced at trial was insufficient to support the jury's verdict.[10] He says that he never participated in the conspiracy to possess and distribute cocaine alleged in Count I of the indictment, and that the testimony of various government witnesses to the contrary was not credible. He further argues that, with regard to Count III of the indictment, the evidence at trial was insufficient because, although he was present at the time and place where the cocaine was to be delivered,

---

[9]In addition, we note that, in a conspiracy charged under 21 U.S.C. § 846, the government is not required to prove any overt acts in furtherance of the conspiracy. *United States v. Shabani*, 513 U.S. 10, 11 (1994).

[10]In reviewing a challenge to the sufficiency of the evidence, we must "view the evidence in the light most favorable to the government, and [we] will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Thus, a claim of insufficiency of the evidence places a very heavy burden on an appellant." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (citations and quotation marks omitted).

11

there was no evidence that he discussed drugs with the other individuals present, and he claimed to have a legitimate purpose for his presence at the place of delivery. He ignores, as we cannot, the weight of evidence against him. For example, Carnivale explicitly testified that he and Gagliardi conspired to possess and distribute cocaine. Although Gagliardi argues that Carnivale was not credible, there is no sound basis for intruding on the jury's decision to believe otherwise. With respect to the charge of attempted possession and distribution of cocaine, the evidence at trial included testimony by Carnivale that Gagliardi was to receive a portion of a cocaine shipment scheduled for delivery on October 29, 2002, and Gagliardi was admittedly present at the location during the time that the cocaine was to be delivered. Again, there was thus a clearly sufficient basis for the jury's verdict.

7.    *The Jury's Verdicts Were Not Inconsistent*

Gagliardi next argues that the jury returned inconsistent verdicts.[11] He points out that, on Count I of the indictment, the jury convicted him of participating in a conspiracy to distribute between 500 grams and one kilogram of cocaine but, on Count II of the indictment, it acquitted him of possession with intent to distribute 500 grams of cocaine on October 8 or 9, 2002. According to Gagliardi, the jury's decision to acquit him on Count II of the indictment is inconsistent with its decision to convict him on Count I.

---

[11]Gagliardi did not raise this contention at the time of the verdict or in his post-trial motions. Hence, our review is for plain error only. *United States v. Boone*, 279 F.3d 163, 174 n.6 (3d Cir. 2002).

12

However, we see no error, much less plain error, in the District Court's decision to respect the jury's determinations. Simply put, even if Gagliardi did not personally distribute 500 grams of cocaine on October 8 or 9, 2002, that does not mean that he did not participate in a conspiracy to distribute that amount or more. Indeed, Gagliardi acknowledges that the alleged conspiracy involved quantities of cocaine in excess of five kilograms.

### 8. *The District Court Properly Instructed the Jury*

Gagliardi claims that the District Court erred by failing to instruct the jury that he had the right to refuse to testify at trial.[12] Gagliardi admits, however, that he requested that such an instruction not be given because he believed that the jury would be more likely to acquit him if it incorrectly believed that, by choosing to act as his own attorney, he was legally barred from testifying as a witness at trial. Intent on foisting his erroneous version of the law on the jury, Gagliardi specifically asked the District Court not to instruct the jury that he had the right to refuse to testify. The District Court counseled Gagliardi that omitting the instruction was unwise, but Gagliardi insisted that the instruction not be given.

Notwithstanding that position at trial, Gagliardi now insists that the District Court should have given the instruction because, after granting his request, the District Court

---

[12]Again, Gagliardi failed to allege any deficiency in the jury instructions in the District Court. Hence, our review is for plain error only. *United States v. Turks*, 41 F.3d 893, 897 (3d Cir. 1994).

13

briefly mentioned his right not to testify when it instructed the jury on the presumption of innocence. According to Gagliardi, the District Court should have cured its supposedly mistaken reference to the right to refuse to testify by giving a full instruction on that right.[13]

The argument is specious. Gagliardi made no such demand before the District Court, and that Court's passing reference to Gagliardi's right not to testify did not emphasize that he had chosen to exercise that right. Gagliardi cannot be heard to claim error on appeal, given his own repeated insistence that the District Court not instruct the jury on his right to refuse to testify.[14] *See United States v. Olano*, 507 U.S. 725, 733 (1993) (explaining that "a defendant who knowingly and voluntarily pleads guilty ...

---

[13]The District Court's instruction on the presumption of innocence provided in pertinent part that:

> The burden is never on the defendant to prove that he is not guilty. The government has the burden of proving each of the elements of the crimes charged beyond a reasonable doubt. And as you know, the law never imposes upon the defendant the burden or duty of calling any witnesses or producing any evidence or testifying himself.

(Supp. App. at 931-32)

[14]Gagliardi also raises three other challenges to the District Court's jury instructions. He contends that the District Court did not instruct the jury that stipulated facts were to be taken as proven, that the District Court incorrectly instructed the jury on the elements of the crime of attempt, and that the District Court improperly informed the jury that Counts III and IV of the indictment were identical to Count II. We have examined each of Gagliardi's additional challenges to the District Court's jury instructions and conclude that they do not constitute plain error and require no further discussion.

cannot have his conviction vacated by court of appeals on the grounds that he ought to have had a trial.").

9.      *The District Court Properly Denied Gagliardi's Motion for a Bill of Particulars*

Gagliardi's next argument is that the District Court erred in denying his motion for a bill of particulars.[15]  Once again pointing to the evidence regarding the October 3, 2002 drug transaction, Gagliardi contends that, because the government did not explicitly include the October 3, 2002 transaction in the indictment, the District Court should have granted him a bill of particulars.  Again he is wrong.  "A bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation.  Rather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation." *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985) (citations omitted).  Further, "access to discovery ... weakens the case for a bill of particulars." *United States v. Urban*, 404 F.3d 754, 772 (3d Cir. 2005).  Gagliardi had the evidence regarding the October 3, 2002 drug transaction no later than during pretrial discovery.  Accordingly, it was no abuse of discretion for the District Court to deny Gagliardi's motion for a bill of particulars.

---

[15]We review a District Court's decision to deny a bill of particulars for abuse of discretion. *United States v. Eufrasio,* 935 F.2d 553, 575 (3d Cir. 1991).

10.    *Gagliardi's Remaining Arguments Are Without Merit*

Finally, Gagliardi asserts that he is entitled to a new trial because a juror fell asleep during the trial and because one of the jurors inappropriately discussed the case with an alternate juror. However, he does not cite anything in the record to support his assertions. He also argues that he did not receive notice that the District Court would consider a conviction he received in 1991 when calculating his sentence. The record is clear, however, that Gagliardi received the required notice.

III.   *Conclusion*

Accordingly, we will affirm the judgment of conviction and sentence.