NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2955
_____

UNITED STATES OF AMERICA

v.

MACK JONES,
                    Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. Criminal No. 06-cr-00076-6
(Honorable Joseph E. Irenas)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 13, 2011

Before:  SLOVITER, SCIRICA and SMITH, *Circuit Judges*.

(Filed: October 11, 2011)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Mack Jones was one of three co-defendants tried and convicted in federal court for

participating in an extensive drug-trafficking conspiracy based out of Camden, New

Jersey. This opinion addresses Jones's appeal. After a two month trial, a jury found Jones

guilty of conspiracy to distribute and to possess with intent to distribute cocaine and

cocaine base, under 21 U.S.C. §846 and §841(b)(1)(A). The court imposed a sentence of life imprisonment. Jones asserts six claims of error: (1) the government failed to prove the existence of a single conspiracy, thereby causing a "material variance" from the indictment and substantially prejudicing Jones's rights; (2) the court erred in denying his motion for a bill of particulars; (3) the court erred in admitting testimony from Raymond Morales about who killed Torey Bussie; (4) the court violated his rights under the Confrontation Clause in allowing Agent David McNamara to testify about interviews with drug arrestees as a basis for his expert opinion; (5) the court erred in permitting the government to prove he was in prison in 2003 and in 2006; and (6) his sentence was unconstitutional. We will affirm.

## I.

We recite the facts relevant to this appeal in the companion case, *United States v. Judge*, No. 09-2248 (3d Cir. October 11 , 2011).

## II.

Jones argues the government failed to prove a single conspiracy, proving instead multiple drug-trafficking conspiracies based out of Camden, and the variance between the indictment and the evidence at trial was prejudicial. "[A] conviction must be vacated and the indictment dismissed when (1) there was at trial a variance between the indictment and the proof and (2) the variance prejudices a substantial right of the defendant." *United*

*States v. Schurr*, 775 F.2d 549, 553 (3d Cir. 1985).[1] Variance will lie when the government alleges a single conspiracy in the indictment, but produces evidence showing multiple conspiracies. *United States v. Kelly*, 892 F.2d 255, 258 (3d Cir. 1989); *see also Kotteakos v. United States*, 328 U.S. 750, 775 (1972). Our task on review is to "determine whether the record, when viewed in the light most favorable to the government, contains substantial evidence to support the jury's verdict." *Kelly*, 892 F.2d at 258. If there is sufficient evidence of a single conspiracy, there is no variance and we will sustain the verdict. *United States v. Perez*, 280 F.3d 318, 345 (3d Cir. 2002) ("We will sustain the jury's verdict if there is substantial evidence . . . to support a finding of a single conspiracy."). If there is insufficient evidence of a single conspiracy, we vacate the conviction if the defendant can show the variance prejudiced his "substantial rights." *United States v. Kemp*, 500 F.3d 257, 291 (3d Cir. 2007).

Here, the evidence was sufficient to prove Jones's involvement in a single drug-trafficking conspiracy headed by Raymond Morales. The government demonstrated that between 1993 and 2004, Morales imported hundreds of kilograms of cocaine from two primary sources, Peter Mellor in Arizona and "Glasses" in New York. Morales used multiple channels to sell his cocaine, including sub-organizations with their own

---

[1] In *Schurr*, we held the material variance rule is "grounded in three critical principles": it protects the right of the individual "not to be tried *en masse* for the conglomeration of distinct and separate offenses committed by others"; it protects the right of the individual to be informed of the charges against him and to prepare his defense; and it "rests on a principle akin to double jeopardy . . . minimiz[ing] the danger that the defendant may be prosecuted a second time for the same offense." *Schurr*, 775 F.2d at 553-54 (internal quotation marks and citations omitted).

distribution schemes. Jevon Lewis's group, Mack Jones's group, and the "MOB Boys," were three such organizations.[2] The government demonstrated that the Morales subgroups met regularly, and coordinated and supported one another. Troy Clark, of the MOB Boys, testified to helping Lewis get back on his feet as a dealer when he was released from jail in 2001. Trevor Smith, also of the MOB Boys, explained how Jones helped him to establish his territory after he was released from prison in 1997. Other witnesses testified the groups shared information about the preparation of crack cocaine and assisted each other when supply was low. Considering all this, the jury had ample evidence to conclude Morales and his network of distributors constituted a single drug-trafficking conspiracy. *See United States v. Quintero*, 38 F.3d 1317, 1337 (3d Cir. 1994) ("[A] single drug conspiracy may involve numerous suppliers and distributors operating under the aegis of a common core group."); *Kelly*, 892 F.3d at 258 (holding that a "master conspiracy with sub-schemes" to sell speed was a single conspiracy).

III.

---

[2] As the court found during a post-trial hearing, the fact that the groups regularly obtained drugs from Morales on credit and worked together over a long period of time demonstrated a comprehensive scheme. The court stated: "I think . . . the jury could have found . . . You have the MOB Boys, you have Jevon Lewis, you have Mack Jones, and you have Ray Morales himself who functions really in two different roles because he's a weight supplier, but he also has a kind of retail operation as well I believe. Well, all three of the others purchased drugs often [on] credit by the way, which case law says is a sign of working together, from Morales . . . [A]ll three buy – deal with Morales, prior to Morales going to jail, and all three pick up afterwards. . . . [T]his is pretty strong stuff. I mean it survives – not only does it survive over a long period, but it survives even multiple jail terms for various participants. . . . [Y]ou know, there is a continuous relationship."

Jones also contends the court erred in denying his motion for a bill of particulars. A bill of particulars is a "formal, detailed statement of the claims or charges brought by a plaintiff or a prosecutor[.]" Black's Law Dictionary 177 (8th ed. 2004). Its purpose is to "inform the defendant of the nature of the charges brought against him . . . [so he may] adequately prepare his defense . . . avoid surprise during the trial and . . . [be] protect[ed] . . . against a second prosecution for an inadequately described offense." *United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005) (internal quotation marks and citation omitted). However, a bill of particulars is only required if an indictment fails to perform these functions in the first place. *Id.* at 771-72. We review for abuse of discretion, and find no abuse "unless the deprivation of the information sought leads to the defendant's inability to adequately prepare his case, to avoid surprise at trial, or to avoid the later risk of double jeopardy." *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1971).

The court did not abuse its discretion in denying Jones a bill of particulars, and in any event, Jones suffered no prejudice from the denial. Before trial, Jones requested a bill of particulars specifying the locations and times of the drug sales for which the government would allege Jones was responsible. The court's denial was proper. An indictment must provide "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Here, the government's indictment contained numerous factual allegations about the Morales Organization's conspiracy and Jones's involvement, meeting the 7(c)(1) standard and making a bill of particulars unnecessary. *See Urban*, 404 F.3d at 772. Moreover, Jones suffered no

5

prejudice. Early on in the trial, namely on January 14, 2008, the government elicited testimony from a witness about drug markets run by Jones. The trial continued through March. Accordingly, Jones had considerable time to investigate the locations identified by the witness and to prepare his defense. *Cf. United States v. Rosa*, 891 F.2d 1063, 1067 (3d Cir. 1989) (holding the denial of a bill of particulars was not reversible error because it failed to cause the defendant any prejudice).

IV.

Jones contends the court erred in permitting Morales to testify to hearing from a fellow inmate in a halfway house that members of a drug gang run by Leonard Paulk had killed Torey Bussie. Jones asserts Morales's testimony was inadmissible hearsay, prejudicial in undermining his effort to prove Morales killed Bussie.

Jones's claim is unavailing. First, he identifies no place in the record where Morales related statements by the inmate. During the government's direct examination of Morales, the prosecutor asked, "Based on the threat information that you heard [in the halfway house] and other conversations that you had, do you think you know who was responsible for killing Tiz?" Morales answered, "Yes . . . John-John." This sequence did not result in hearsay. At no point did Morales repeat a statement, or assertion of fact, by an out-of-court witness. Moreover, any error in the court's admission of Morales's testimony was harmless.[3]

---

[3] Jones, like Jevon Lewis, argues the court also erred in allowing Karah Moore to testify about Dinell Reed's admission to killing Torey Bussie. We disagree. As we elaborate in our decision for Lewis's appeal, the court did not abuse its discretion in admitting

V.

Jones argues the court violated his rights under the Confrontation Clause when it permitted DEA Agent David McNamara, an expert for the government, to testify about the content of his interviews with drug arrestees. McNamara referred to these interviews as a basis for his expert opinion. Jones alleges the arrestee statements were "testimonial," and submitting them to the jury through the vehicle of Agent McNamara ran afoul of *Crawford v. Washington*, 541 U.S. 36 (2004). We exercise plenary review over challenges that implicate the Confrontation Clause, and if we find a violation, we consider whether the error was harmless beyond a reasonable doubt. *United States v. Lore*, 430 F.3d 190, 208-09 (3d Cir. 2005).

In resolving Jones's Confrontation Clause challenge, we decline to reach whether the arrestees' statements were "testimonial"[4] or whether *Crawford* is implicated by McNamara's remarks in the first place, given that McNamara only referred to the interviews to situate his expert opinion.[5] Even if the statements were testimonial and

Moore's testimony as a statement against interest by Reed. *See United States v. Lewis*, No. 09-2540 (3d Cir. October 11, 2011).

[4] In a case decided last Term, the Supreme Court held that whether a statement is "testimonial" for the purposes of *Crawford* turns on the "primary purpose of the interrogation" producing the statement. *See Michigan v. Bryant*, 131 S. Ct. 1143, 1154-57 (2011). If the police's primary purpose was to resolve an ongoing emergency rather than investigate a crime, the statements elicited will not be deemed "testimonial." *Id.*

[5] We have not yet addressed the extent to which *Crawford* prevents experts from testifying about their opinions or the bases for their opinions, when the expert has relied on inadmissible hearsay. *See generally* Hon. Jack Nevin, *Conviction, Confrontation and Crawford: Gang Expert Testimony as Testimonial Hearsay*, 34 Seattle U. L. Rev. 857, 878-79 (2011) (explaining that prosecutors' increasing use of "gang experts," who formulate opinions based on investigations of gangs and interviews with arrestees, and

*Crawford* applies, we find any error in the court's admission of McNamara's testimony was harmless. Agent McNamara specialized in phone usage patterns of drug-trafficking organizations. At trial, he related how such groups register cell phones, distribute them among members, and use them to communicate. While McNamara explained his views were informed by "hundreds" of interviews with arrestees, he did not recite any direct statements from those interviews nor delve into specific interviews in detail. Thus, we find any prejudice caused to Jones was at most minimal. *Cf. United States v. Ayala*, 601 F.3d 256, 275 (4th Cir. 2010) ("[E]ven if we assume that each expert did rely on testimonial statements . . . the experts did not act as mere transmitters and in fact did not repeat statements of particular declarants to the jury. Instead, they offered their independent judgments . . . [which] resulted from many years of observing the gang, studying its methods, and speaking with its members.").

VI.

Jones contends the court erred in allowing evidence that he had been incarcerated on two occasions, in 2003 and 2006. Jones claims the evidence was unfairly prejudicial under Fed. R. Evid. 403. We review for abuse of discretion. *United States v. Starnes*, 583 F.3d 196, 213-14 (3d Cir. 2009).

---

the *Crawford* doctrine, are on a "collision course"). Other circuits have held that as long as the expert does not "parrot" out-of-court statements or act as a "transmitter" for testimonial hearsay, there is no *Crawford* problem when the expert testifies about his opinion or its bases. *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009) ("As long as [the expert] is applying his training and experience to the sources before him and reaching an independent judgment, there will typically be no *Crawford* problem."); *United States v. Lombardozzi*, 491 F.3d 61, 72 (2d Cir. 2007).

The court did not abuse its discretion. The court found the evidence probative, outweighing any possible prejudice– Jones's 2003 incarceration was probative because it explained why he did not appear in the government's wiretap of Raymond Morales in 2003, and the fraternity between Jones and Morales's companion while both men were in prison in 2006 went to a key issue in the case: whether Jones and Morales shared associational ties. Any prejudice the court found was minimal. The jury was not told how long Jones was incarcerated on either occasion, nor of his underlying offenses. Moreover, nearly every witness in the case had served time in jail.

VII.

Finally, Jones argues his sentence of life imprisonment was unconstitutional. He claims the statute subjecting him to a mandatory term of life imprisonment given his two prior felony convictions, 21 U.S.C. § 841(b)(1)(A), is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Jones also claims the statute requiring him to admit or deny his prior convictions during his sentencing hearing, 21 U.S.C. § 851(b), is unconstitutional under the Fifth Amendment. Jones also argues his sentence constitutes cruel and unusual punishment under the Eighth Amendment.

All of Jones's challenges lack merit. With respect to his *Apprendi* argument, we have repeatedly rejected such a claim. District courts are authorized to determine the fact of a defendant's prior convictions. *United States v. Coleman*, 451 F.3d 154, 159 (3d Cir. 2006) ("[P]rior convictions . . . are not elements of the offense and thus may be determined by the District Court by a preponderance of the evidence."); *United States v.*

9

*Ordaz*, 398 F.3d 236, 240-41 (3d Cir. 2005) ("Ordaz argues that the fact of prior convictions should have been submitted to the jury. We reject that challenge. . . . [I]n *Apprendi* the Court specifically exempted prior convictions from its holding . . ."). With respect to Jones's facial challenge to 21 U.S.C. § 851(b) under the Fifth Amendment, Jones's claim fails because as applied, the statute was constitutionally sound. The court did not require Jones to admit or deny his prior convictions at sentencing but allowed him to take the Fifth. On the merits, Jones puts forth no authority holding § 851 violates a defendant's right against self-incrimination. Finally, with respect to the Eighth Amendment, Jones recognizes "established precedent supports the application of this sentence" but argues "evolving standards of decency . . . do not." We are not persuaded. A life sentence was within the recommended Guidelines range for Jones's offense and was statutory required under 21 U.S.C. § 841(b)(1)(A). The sentence was neither cruel nor unusual.

VIII.

For the foregoing reasons, we will affirm the judgment of conviction and sentence.

10