NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2248
_____

UNITED STATES OF AMERICA

v.

AHMED JUDGE,
a/k/a EDY; a/k/a BLEEK

Ahmed Judge,
Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. Criminal No. 06-cr-00076-002
(Honorable Joseph E. Irenas)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 13, 2011
Before:  SLOVITER, SCIRICA and SMITH, *Circuit Judges*.

(Filed: October 11, 2011 )
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

A federal jury found Ahmed Judge guilty of four offenses: conspiracy to commit

drug trafficking, murder in furtherance of a drug-trafficking conspiracy, murder in the

course of a firearms offense, and possession of a firearm by a convicted felon.  Judge

raises several claims of error on appeal: (1) insufficiency of the evidence on three of his charges; (2) failure to suppress his allegedly unlawfully obtained statements; (3) erroneous denial of his motion to sever offenses; (4) failure to declare a mistrial after the government was unable to produce an expert witness to whom it referred in its opening statement; and (5) trial testimony that allegedly ran afoul of his Fifth Amendment rights.[1] We will affirm.

## I.[2]

Raymond Morales, who served as one of the government's key cooperating witnesses in this case, was the leader of a large-scale drug-trafficking organization based in Camden, New Jersey. Between 1993 and 2004, Morales's organization sold hundreds of kilograms of cocaine and cocaine base. Morales distributed both through "drug sets," areas known for drug sales he operated in Camden, and through sub-organizations headed by individuals with whom Morales was friendly. One such sub-organization was led by Jevon Lewis. During the early 1990s through 1995, and from early 2001 through September 2002, Lewis bought cocaine in bulk from Morales.[3] Lewis sold at his own "drug sets" in Camden, including one at 8th and Central Streets. Ahmed Judge worked

---

[1] Judge also joins two arguments presented by co-defendant and co-appellant Mack Jones. Those claims allege the government failed to prove the existence of a single conspiracy, and the court erroneously permitted certain testimony from expert David McNamara. We find both arguments unavailing for reasons set forth in the companion case, *United States v. Jones*, No. 09-2955 (3d Cir. October 11 , 2011).

[2] "[W]e set forth the facts on the basis of the evidence favorable to the government as the verdict winner[.]" *United States v. Lore*, 430 F.3d 190, 197 n.1 (3d Cir. 2005).

[3] From 1995 through early 2001, and from September 2002 onwards, Lewis was imprisoned.

for Lewis for a period of time in 2001 and 2002, functioning primarily as an armed body-man or "enforcer" at Lewis's sets. Mack Jones headed a second subgroup that sourced from Morales. Jones purchased cocaine from Morales from 1994 through 2003, including during periods when Morales was in jail. Troy Clark ran a third group that sourced through Morales, the "MOB Boys."

On September 8, 2001, an individual was shot and killed at Morales's drug set at Atlantic and Norris Streets. Morales believed violence at his markets was bad for business, and wanted to retaliate. Morales mistakenly believed the perpetrator was Kenneth Fussell, and offered Jevon Lewis $10,000 to have Fussell killed. Lewis accepted and contracted with Ahmed Judge and Jamar Bacon to carry out the murder. At 11:30 p.m. on October 4, 2001, Judge and Bacon shot and killed Fussell on the front steps of Fussell's apartment in Camden.

Camden police officer Sergeant Strang was two blocks away from the shooting when it occurred and went to the scene immediately. An eyewitness told Strang he saw, from his second story bathroom, an African-American male wearing a sweatshirt and a baseball cap flee to a nearby field. Strang searched the field and within minutes, found Judge hiding behind hay bales, squatting on a sweatshirt and a baseball cap. Strang asked Judge to show his hands and when Judge did not respond, Strang directed another officer to handcuff him. Judge told Strang he had been shot. When Strang asked by whom, Judge did not respond. Strang asked if the clothes Judge was sitting upon belonged to him, and Judge answered affirmatively.

3

Hours later, at approximately 4:00 a.m. on October 5th, Judge was given *Miranda* warnings at the Camden police station, which he waived, and was questioned by Officer Kellejan. Judge made exculpatory statements. On November 3, 2001, Judge was arrested for the Fussell murder and brought to the Camden police station. He was again issued *Miranda* warnings, which he waived, and was again questioned by Officer Kellejan. Judge reaffirmed his statements from his session with Kellejan on October 5th.

A grand jury returned a four-count superceding indictment against Ahmed Judge, Jevon Lewis, and Mack Jones. Count One charged defendants with conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base, under 21 U.S.C. § 846 (conspiracy) and § 841(b)(1)(A) (drug trafficking);[4] Count Two charged Judge and Lewis with murder in furtherance of a continuing criminal enterprise or a drug-trafficking conspiracy, under 21 U.S.C. § 848(e)(1)(A); Count Three charged Judge and Lewis with murder in the course of a firearms offense, under 18 U.S.C. § 924(c); and Count Four charged Judge with possession of a firearm by a convicted felon, under 18 U.S.C. § 922(g). After a two-month trial, the jury found the defendants guilty on all counts. The court sentenced Judge to concurrent terms of life imprisonment on Counts One and Two, a consecutive term of 120 months on Count Three, and a concurrent term of 120 months on Count Four. It sentenced Lewis to concurrent terms of life imprisonment on Counts One and Two, and a consecutive term of 120 months on Count Three. It sentenced Jones to a term of life imprisonment. All three defendants filed

---

[4] The indictment of April 25, 2007, also charged Dennis Rodriguez, Francisco Morales, Ruben Lozada, and Mark Davis on Count One. These co-defendants pled guilty.

appeals. We decide Ahmed Judge's appeal in this opinion, and Lewis and Jones's appeals in companion opinions.

II.

Judge contends he should be acquitted of three of his convictions – for conspiracy, murder in furtherance of a drug-trafficking conspiracy, and murder in the course of a firearms offense – for lack of sufficient evidence. When adjudicating a sufficiency of the evidence challenge, "we review the evidence in the light most favorable to the government," *United States v. Applewhaite*, 195 F.3d 679, 684 (3d Cir. 1999), and affirm "if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (internal quotation marks and citation omitted). We examine the "totality of the evidence, both direct and circumstantial" and "credit all available inferences in favor of the government." *United States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003).

There was sufficient evidence to convict Judge for conspiracy under 21 U.S.C. § 846 and § 841(b)(1)(A). Conspiracy requires (1) an "agreement" between two or more persons to commit an illegal act, and (2) that a defendant voluntarily participate in the agreement through "shar[ing] a unity of purpose" with at least one co-conspirator. *See Applewhaite*, 195 F.3d at 684. To show voluntary participation in a drug-trafficking conspiracy, the government must prove the defendant "knew that the purpose of the agreement was the specific unlawful purpose . . . [of] possession of a controlled

5

substance with intent to distribute." *United States v. Thomas*, 114 F.3d 403, 405 (3d Cir. 1997).

Judge argues the government did not prove his participation in a conspiracy to traffic drugs, nor his sharing a unity of purpose with any co-conspirator.[5] The evidence, Judge claims, "at worst placed [him] in the company of drug dealers." We disagree. Several government witnesses testified about Judge's active participation in Jevon Lewis's cocaine distribution operations throughout 2001 and 2002. One witness, Bernard Murray, testified to regularly visiting Lewis's drug set at 8th and Central Streets, where he would see Judge onsite, armed with a gun. Three MOB Boys testified about conversations they had with Judge in 2001, during which he complained about the quality of Lewis's crack cocaine, asked for advice about running a drug operation, and strategized about opening a new drug set with Lewis at 10th and Van Hook Streets. Additionally, the government introduced records showing 135 phone calls between Judge and Lewis over a five week period in May and June of 2001. Taken as a whole, this evidence provided a sufficient basis upon which a rational jury "could have found the essential elements" of Lewis's conspiring to traffic cocaine and cocaine base beyond a reasonable doubt. *Dent*, 149 F.3d at 187.

---

[5] Judge concedes the government presented sufficient evidence of an agreement to unlawfully distribute cocaine.

Furthermore, there was sufficient evidence to convict for murder in furtherance of a drug-trafficking conspiracy.[6] The statute provides: "[A]ny person engaging in any offense punishable under section 841(b)(1)(A) of this title . . . who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results shall be [subject to punishment]." 21 U.S.C. § 848(e)(1)(A). Accordingly, the elements of a murder charge under § 848 are: an "intentiona[l]" killing; by a defendant "engaging" in an act punishable under § 841(b)(1)(A) (e.g., drug-trafficking conspiracy); and a nexus between the killing and the § 841(b) offense. *See United States v. Santos*, 541 F.3d 63, 69 (2d Cir. 2008) (requiring "a meaningful connection between the killing and the drug offense").[7]

Viewed in the light most favorable to the government, ample evidence demonstrated Judge's guilt on all three elements of murder in furtherance of a drug-trafficking conspiracy. As for an "intentional killing," an eyewitness saw Judge fleeing from the shooting, Sergeant Strang found Judge hiding in a field thirty yards away from

---

[6]The government argues Judge failed to preserve his sufficiency of the evidence objection for this murder count, warranting plain error review. Gov't Br. at 56, 62. However, in his Rule 29 motion filed at the conclusion of the government's case, Judge contested the sufficiency of the evidence on the § 848 murder charge. Thus, the *Dent* standard of review is appropriate.

[7] Judge argues an additional mens rea element should be read into the statute: *knowledge* that the killing was in furtherance of the conspiracy. But Judge cites no authority from this circuit supporting his position. Rather, he urges we follow *United States v. McCullah*, 76 F.3d 1087 (10th Cir. 1997), in which he claims the Tenth Circuit required "outside contractor[s to] know of the connection between the homicide" and the conspiracy. Appellant Br. at 54. Even if we were to follow *McCullah*, it is readily distinguishable from this case. The defendant in *McCullah* was hired solely for the § 848 murder and had no other connection to the conspiracy. Judge meanwhile was convicted of the underlying conspiracy the murder furthered.

the murder weapon (subsequently recovered by two other officers), and two MOB Boys testified that Judge confessed to them he had killed Kenneth Fussell. As for Judge's "engaging" in an act punishable under § 841(b)(1)(A), in his case, conspiracy to traffic drugs, several government witnesses described Judge as a regular "muscle" at Lewis's drug sets, and the government's phone records showed a pattern of correspondence between Judge and Lewis consistent with conspiracy to sell drugs. As for a nexus between the killing and the drug-trafficking conspiracy, Raymond Morales testified in detail about arranging for Fussell's death as well as his retaliatory motive. There was also sufficient evidence with respect to murder in the course of a firearms offense. Judge's arguments on this charge are derivative of those he makes for the conspiracy charge – contending that because the government failed to prove his participation in a drug-trafficking conspiracy, it also failed to prove his responsibility for murder in the course of firearm offense, undertaken to carry out the conspiracy. Because we reject Judge's argument on the conspiracy charge, we reject this argument as well.

III.

Judge contends the court erred in denying his motions to suppress three sets of his statements. We review factual findings in a suppression hearing for clear error, and exercise plenary review over the court's application of law to those facts. *United States v.*

*Tracey*, 597 F.3d 140, 146 (3d Cir. 2010). The court's decision to admit Judge's

statements was justified by both the facts and the law.[8]

First, Judge argues his statements to Sergeant Strang during their in-field

encounter on the night of October 4th should have been suppressed because there were no

*Miranda* warnings.[9] The District Court rejected Judge's motion to suppress because it

found Strang's questioning of Judge in the field to fall squarely under *Quarles*'s public

safety exception. *See New York v. Quarles*, 467 U.S. 649, 659 n.8 (1984) (holding an

individual's statements, albeit not preceded by *Miranda* warnings, are admissible if the

totality of the circumstances shows the officer's questions to "relate to an objectively

reasonable need to protect the police or the public from any immediate danger"). A

shooting had occurred in a dense urban area near a community center; a witness had told

Officer Strang a man in a sweatshirt and a baseball cap fled from the shooting to a nearby

field; Officer Strang found Judge hiding among a sweatshirt and cap in the indicated

---

[8] Judge claims error from the denial of his request for an evidentiary hearing. We review such a decision for abuse of discretion, and will reverse "only in rare circumstances." *United States v. Hines*, 628 F.3d 101, 104-105 (3d Cir. 2010). The court concluded the substance of Judge's suppression arguments had already been explored in an extensive proceeding in New Jersey state court, in July 2003. At that hearing, Judge made similar arguments to suppress his statements, Officers Strang and Kellejan had both testified, and Judge had cross-examined each. The district court found Judge failed to "put forward any real factual challenge" to the facts developed in the New Jersey proceeding, and an additional hearing would amount to no more than "another shot at cross examining" the officers in the hopes Judge would discover new facts. Accordingly, it did not abuse its discretion in denying Judge's motion for a hearing on suppression. *See Hines*, 628 F.3d at 105 ("A motion to suppress requires an evidentiary hearing only if . . . there are disputed issues of material fact that will affect the outcome of the motion to suppress.").
[9] Judge volunteered to Officer Strang he had been shot. Judge also told Officer Strang the sweatshirt and baseball cap he was sitting on top of were his.

field; and upon seeing the officers, Judge volunteered he had been shot. Under the circumstances, the court was justified in construing Strang's questions as driven by an "objectively reasonable need" to secure the public safety – namely, to locate the missing firearm and prevent further violence. *See United States v. Watters*, 572 F.3d 479, 482-83 (8th Cir. 2009) (holding "the officers' questions were designed to locate a weapon [the defendant] might have hidden shortly before his arrest" and so were "prompted by a concern for public safety"); *United States v. Are*, 590 F.3d 499, 506 (7th Cir. 2009) ("[Q]uestioning a suspect about whether he has a gun may fall within *Quarles*' public safety exception.").[10] The court's determination that Judge's in-field statements were admissible under *Quarles* was proper.

Judge also contends two sets of his statements to Officer Kellejan, the first of which was made hours after the October 4th shooting and second of which was made after Judge was arrested for Fussell's murder on November 3, 2001, should have been

[10] The district court's application of *Quarles* also finds support in the Supreme Court's reasoning in a recent decision, *Michigan v. Bryant*, 131 S. Ct. 1143 (2011). Although *Bryant* was a Confrontation Clause case rather than a Fifth Amendment case, the Court held an individual's statements to the police were not "testimonial" and did not trigger a defendant's rights under the Confrontation Clause, because the "primary purpose of the interrogation" had been to address an ongoing emergency. *Id.* at 1165-66 ("[T]he ultimate inquiry is whether the 'primary purpose of the interrogation [was] to enable police assistance to meet [the] ongoing emergency' . . . [T]he police responded to a call that a man had been shot. . . . [T]hey did not know why, where, or when the shooting had occurred. Nor did they know the location of the shooter or anything else about the circumstances in which the crime occurred. The questions they asked—'what had happened, who had shot him, and where the shooting occurred,'—were the exact type of questions necessary to allow the police to 'assess the situation, the threat to their own safety, and possible danger to the potential victim' and to the public . . . In other words, they solicited the information necessary to enable them 'to meet an ongoing emergency.'") (citations omitted).

suppressed. On both occasions, Judge had been taken to the Camden police station and given *Miranda* warnings. On both occasions, Judge had orally acknowledged his rights and signed a *Miranda* waiver form. Although not alleging any procedural *Miranda* violations, Judge contends his statements were involuntary.[11] With respect to his statements on the early morning of October 5th, Judge argues he had been in custody without food and water for seven hours before being interrogated, and anything he said was accordingly "the product of psychological duress." With respect to November 3rd, Judge argues his statements were involuntary because they were "based on the unconstitutionally obtained statements . . . made . . . on October 5."

The District Court correctly rejected Judge's involuntariness claims. In determining whether a confession is voluntary, a court "must satisfy [itself] that the confession was the product of an essentially free and unconstrained choice by its maker . . . and that the apellant's will was not overborne." *United States v. Swint*, 15 F.3d 286, 289 (3d Cir. 1994) (internal citations and quotations omitted). Here, relying on the transcript from a New Jersey state court proceeding during which Judge developed his

---

[11] In his October 5th session with Officer Kellejan, Judge admitted to being in the neighborhood at the time of the shooting. He said while on Chelton Street, individuals in a vehicle began to shoot at him, and he ran away. Judge was unable to describe the individuals who shot him, nor could he think of any reason people would want to shoot him. When Officer Kellejan asked Judge to point out where he was shot, Judge said he was not sure he had been wounded that evening. Rather, he showed Officer Kellejan a scar on his ankle which he said he received four weeks earlier. Judge denied having any involvement in the shooting of Kenneth Fussell and denied having a gun that evening. He admitted the hoodie and baseball cap found at the scene were his. In his session on November 3, 2001, Judge reiterated his statements from the previous interview about the events of October 4, 2001.

11

suppression arguments at length, the District Court found "nothing in the record that suggests [Judge's will] was overborn" on either October 5th or November 3rd. The court found no evidence of threats or coercive comments made by the officers during the interviews, nor any indication Judge was physically distressed. Accordingly, the court did not err in finding Judge's post-*Miranda* statements to be voluntary and in admitting them.[12]

## IV.

Judge contends the court erred in denying his pretrial motion to sever his two murder counts from his drug conspiracy count. We review for abuse of discretion, *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991), and "look to the indictment and not the subsequent proof adduced at trial" when conducting such review. *United States v. Thornton*, 1 F.3d 149, 153 (3d Cir. 1993). If the denial was improper, we determine whether it led to "clear and substantial prejudice resulting in a manifestly unfair trial." *Eufrasio*, 935 F.2d at 568.

The court did not abuse its discretion. Under Fed. R. Crim. P. 8(b), an indictment may charge two or more defendants with multiple offenses if the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or

---

[12] Any error with respect to the district court's admission of Judge's statements, either to Sergeant Strang in the field or to Officer Kellejan at the station, would have been harmless. There was considerable evidence of Judge's guilt of Fussell's murder wholly independent of his statements to the police. This evidence included Judge's confessions to the MOB Boys, eyewitness testimony placing Judge fleeing from the shooting, and the fact that Judge was found hiding in close proximity to the scene of the murder and to the murder weapon.

transactions, constituting an offense or offenses."[13] Fed. R. Crim. P. 8(b). Rule 8(b) allows for joinder of a conspiracy charge and substantive counts arising out of that conspiracy, "since the claim of conspiracy provides a common link, and demonstrates the existence of a common scheme or plan." *United States v. Somers*, 496 F.2d 723, 729-30 (3d Cir. 1974). In the indictment, the government explicitly linked each murder charge to the drug-trafficking conspiracy charge. Count 2, alleging murder in furtherance of a drug conspiracy, stated Judge killed Fussell "while engaging in . . . the conspiracy to distribute . . . crack cocaine . . . as charged in Count One of this Superseding Indictment." Count 3, for murder in the course of a firearms offense, used identical language. Accordingly, the court did not abuse its discretion in finding Judge's conspiracy and murder charges to arise out of the "same series of acts or transactions" as envisioned by Rule 8(b) and in thus denying the motion to sever. *See Irizzary*, 341 F.3d at 289-90 ("[W]e conclude that the superceding indictment did not improperly join separate, unrelated crimes allegedly committed by Irizarry. Rather, he was charged with a RICO substantive violation and a RICO conspiracy violation, and all of the criminal acts charged against him in the superceding indictment . . . satisif[y] the 'same act or transaction' requirement of Rule 8(b).").

---

[13] When a defendant is charged with multiple counts in a multi-defendant case, joinder of his offenses is governed by Rule 8(b). *See United States v. Irizzary*, 341 F.3d 273, 287 (3d Cir. 2003) ("Rule 8(a) 'dealing with the joinder of offenses, applies only to prosecutions involving a single defendant' . . .[I]n a multi-defendant case such as this, 'the tests for joinder of counts and defendants is merged in Rule 8(b).'" (citations omitted)).

V.

Judge claims the court erred in denying his motion for a mistrial, proffered after the government was unable to produce a gunshot residue expert to whom it had referred earlier. During its opening statement, the government informed the jury it intended to call an expert witness, Dr. Elzbieta Bakowska, to testify about gunshot residue found on Judge's hands after the shooting. Due to her severe illness, however, the government was unable to call Dr. Bakowska. Judge moved for a mistrial. The court denied his motion but instructed the jury to disregard the government's references to Dr. Bakowska. We review for abuse of discretion. *United States v. Retos*, 25 F.3d 1220, 1224 (3d Cir. 1994).

The court's denial was not an abuse of discretion. When a "prosecutor's remarks taken in the context of the trial as a whole, [are] sufficiently prejudicial to have deprived the defendant of his right to a fair trial," a declaration of mistrial may be appropriate. *Retos*, 25 F.3d at 1226. But this is a high standard. A reviewing court should assess "the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001). The court concluded the government's references to Dr. Bakowska in its opening statement had been minor compared to the quantity of evidence in the case as a whole, and that a curative jury instruction would dispel any potential prejudice.[14] This assessment was reasonable. *See, e.g.*, *United States v. DeRosa*, 548 F.2d 464, 472 (3d Cir. 1977) (holding

---

[14] The instruction directed the jury to "completely disregard all such statements by the prosecution" about a gun residue expert, and to assume "[t]here is no evidence in this case that there was any gunshot residue on Mr. Judge's hand at any time."

14

the government's reference to wiretap evidence during its opening did not cause undue prejudice because a jury instruction was sufficiently curative).

VI.

Finally, Judge argues the court erred in failing to declare a mistrial or to grant a limiting instruction after Sergeant Strang testified about several instances of Judge's silence during their in-field encounter on October 4th. We review for abuse of discretion. *Complaint of Consol. Coal Co*., 123 F.3d 126, 131 (3d Cir. 1997).

During the government's direct examination, Sergeant Strang testified to five instances of Judge's silence – or failure to volunteer information –in the field after the Fussell shooting. Strang stated: (1) Judge did not respond when asked who had shot him; (2) Judge did not respond when Strang asked if an ID card found on him belonged to him; (3) Judge did not volunteer information on why someone had been shooting at him; (4) Judge did not state that he was in pain; (5) Judge did not mention why he was in the area at that time. Strang explained that throughout this encounter, Judge had been handcuffed as a security measure but had not been given *Miranda* warnings nor arrested.[15]

---

[15] When Strang was testifying to these matters during trial, Judge's counsel did not raise contemporaneous objections. The following day, however, Judge's counsel moved for a mistrial or a limiting instruction, arguing Strang's testimony about Judge's silence had run afoul of Judge's Fifth Amendment freedom from self-incrimination. The district court temporarily denied both motions and accepted briefing. Subsequently, it ruled Strang's testimony had not raised constitutional problems and neither a mistrial nor limiting instruction was needed.

The District Court did not abuse its discretion in concluding Strang's testimony about Judge's silence did not intrude on Judge's Fifth Amendment rights. A person's silence in the face of police questioning before he has been issued *Miranda* warnings can be considered substantively against him at trial, without triggering the Fifth Amendment. *See, e.g.*, *United States v. Johnson*, 302 F.3d 139, 147 (3d Cir. 2002) (sustaining the prosecution's substantive use of the defendant's silence in the face of officer questioning because the bar against such evidence "does not apply to the post-arrest, pre-*Miranda* warnings situation"); *see also Virgin Islands v. Martinez*, 620 F.3d 321, 335 (3d Cir. 2010) ("Not every reference to a defendant's silence, however, results in a *Doyle* violation. Where 'no governmental action induce[s] the defendant to remain silent,' the *Miranda*-based fairness rationale does not control." (citing *Fletcher v. Weir*, 455 U.S. 603, 606 (1982)). We also note that the District Court had previously adjudicated a suppression motion and concluded Strang's failure to issue *Miranda* warnings before questioning Judge in the field was proper. *See supra*. Accordingly, Strang's testimony about Judge's silence did not necessitate a mistrial or a curative instruction.[16]

## VII.

For the foregoing reasons, we will affirm the judgment of conviction and sentence.

---

[16] Any legal error in admitting Strang's testimony about Judge's silence would have been harmless. Strang's description of Judge's various episodes of silence consisted of a few lines of questioning out of a 7000 page trial transcript. After such questioning, the prosecution did not make subsequent reference to Strang's testimony about Judge's silence, neither during trial nor in its closing argument. Accordingly, the prejudicial impact of Strang's testimony was minimal at best.